# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| ALLEN MEREDITH JOHNSON, JR., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CV422-075 |
| OFFICER J. WERNER, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* prisoner Allen Meredith Johnson, Jr. has filed this 42 U.S.C. § 1983 Complaint alleging that he was detained without sufficient suspicion of criminal activity. *See* doc. 1 at 5-8. The Court screened his Complaint and directed service upon defendants Spence and Werner. *See* doc. 7. Defendants waived service, docs. 12 & 13, and have moved to dismiss Johnson's claims on qualified immunity grounds, *see* doc. 19. Defendants disputed the timeliness of Johnson's response to that Motion, albeit unsuccessfully. *See* doc. 27. Their Motion to Dismiss is, therefore, ripe for disposition. Doc. 19. For the reasons explained below, that

Motion should be **GRANTED**. Doc. 19. Johnson's Complaint should, therefore, be **DISMISSED**. Doc. 1.

The Court previously summarized the factual allegations in Johnson's Complaint. *See* doc. 7 at 3-5. Since neither Johnson nor defendants disputes that summary, the Court incorporates it here. *See* doc. 19-1 at 1-2; *see also, e.g.,* doc. 21 at 2-3.

> Johnson alleges that he was visiting a convenience store, located in Savannah, Georgia, on the evening of October 13, 2021. *See* doc. 1 at 5. The manager requested he "leave the store because he was banned." *Id.* Although Johnson alleges that the manager was mistaken, he nevertheless left the store. *Id.* While outside the store, he was approached by two "Chatham County officers," defendants Jermaine Spence and "J. Werner." *Id.* In response to the officers' questions, he stated his contention that he was not "banned." *Id.* They instructed him to "wait while they investigated the matter further and he complied." *Id.*
> He alleges that subsequent investigation revealed that he was not "banned," and he prepared to leave on his bicycle. Doc. 1 at 5. Werner informed him that he[FN] was not free to leave, "because the store manager wanted him banned without a valid reason." *Id.* He states that the officers did not provide a reason for his detention. *Id.* Despite alleging that exchange occurred, Johnson also alleges that "it had been unclear whether or not we still were being held . . . ." *Id.* at 6. When Johnson attempted to mount his bicycle to leave, the officers "surrounded him and began screaming at him to get off the bike." *Id.* He protested that the officers' positions made it impossible for him to get off. *Id.* Officer Werner then "grabbed" him and informed him that he would "receive a charge for obstruction . . . ." *Id.* He was then detained in the back of a patrol car.

> Once he was detained, officers searched his backpack. Doc. 1 at 6. They discovered "a bag," which contained "doctor prescribed medication for acute schizophrenia." *Id.* Johnson alleges that the medication was kept in the "bag" because he was homeless and that "because of the constant heat and cold the pills had disintegrated into a powder." *Id.* Johnson tried to explain the nature of the powder, but Werner "told him to shut up." *Id.* at 7. Johnson demanded that the officers "field test" the powder, but they refused. *Id.*
>
> Werner and Spence transported Johnson to "Ross Rd. Evidence." Doc. 1 at 7. While he was detained in the car with Spence, Werner took the bag "and supposedly tested the substance . . . ." *Id.* Several minutes later, another officer, Officer Crosby, informed Johnson that the powder tested "positive for cocaine." *Id.* at 8. Johnson alleges that the officers were not willing to listen to his explanation of the nature of the powder. *Id.* Instead, he was taken to Chatham County Detention Center and "booked for possession of cocaine [and] obstruction." *Id.* He was then, "held without bond for 83 days . . . ." *Id.* He seeks "to be compensated, monetarily, for [his] loss of wages, property and time." *Id.* at 10.

Doc. 7 at 3-5 (alterations and footnote omitted).

The Court approved Johnson's false arrest claims against Werner and Spence for service. *See* doc. 7 at 9-10. Defendants contend that they are entitled to qualified immunity against Johnson's false arrest claims. *See* doc. 19-1 at 3-6. Johnson filed a number of ambiguous documents, to which defendants objected. *See, e.g.,* doc. 27 at 4-5. In an attempt to clarify what Johnson intended those documents to do, the Court afforded him additional time to respond to the Motion to Dismiss, request limited

3

discovery related to the assertion of qualified immunity, or amend his pleadings. *See id.* at 8-9. In response to that Order, Johnson filed an opposition to defendants' objection to his filings as untimely. *See* doc. 28. Since the Court rejected defendants' argument concerning the timeliness of those filings, his "motion" to address those claims is **DISMISSED** as moot. Doc. 28. He also filed a document titled "Plaintiff[']s Closing Arguments," which the Court construes as his response in opposition to the Motion to Dismiss. Doc. 29.

Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The doctrine is "intended to 'allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). As a result, qualified immunity

"liberates government agents from the need to constantly err on the side of caution by protecting them both from liability 'and the other burdens of litigation, including discovery.'" *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003) (quoting *Lambert v. Fulton Cnty.*, 253 F.3d 588, 596 (11th Cir. 2001)). But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).

To rely upon qualified immunity, a defendant must first show that he acted within his discretionary authority. *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1352 (11th Cir. 2015). Specifically, a defendant must show that he "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman* ex rel. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). If a defendant makes the requisite showing, the Court must grant defendants qualified immunity unless plaintiff has shown (a) a violation of the Constitution by any defendant, (b) the illegality of which was clearly established at the time of the

5

incident. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citations omitted); *see also Charles v. Johnson*, 18 F.4th 686, 698 (11th Cir. 2021) (quoting *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589 (2018)).

For an official to discharge his threshold burden of demonstrating that he acted within his discretionary authority, "there must be a showing by competent summary judgment materials of objective circumstances that would compel that conclusion." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (quoting *Barker v. Norman*, 651 F.2d 1107, 1124-25 (5th Cir. 1981)). The inquiry is fact specific. As the Eleventh Circuit explained:

> Exactly what will suffice to establish such objective circumstances will . . . vary in proportion to the degree of discretion inherent in the defendant's office. Such objective circumstances necessarily must encompass the factual context within which the complained-of conduct took place. But also appropriate is a showing by the defendant of facts relating to the scope of his official duties—e.g., a showing of the circumstances through which he initially came to believe that his lawful authority including within its scope actions of the type that are complained of by the plaintiff.

*Id.* (ellipses in original).

Defendants argue that they have borne their threshold burden in this case because "there can be no doubt that . . ., as police officers . . . ,

6

[they] were acting in their discretionary capacity when they arrested Plaintiff." Doc. 19-1 at 4 (citing *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1331 (11th Cir. 2004); *Wood v. Kesler*, 323 F.3d 872 (11th Cir. 2003)). Johnson discusses defendants' discretionary authority in his response. *See* doc. 29 at 2-6. Although he argues that his continued detention was improper, he never argues that the defendants were not acting within their discretionary authority when they arrested him. *See, e.g., id.* at 5 (arguing that "the discretion undertaken by the Defendants was in fact biased, with the intent to deprive the Plaintiff of his 4th Amendment [rights] . . ."). As this Court has recognized "[c]arrying out an investigatory stop and making an arrest are quintessentially discretionary acts of law-enforcement officials." *Townsend v. Coffee Cnty., Ga.*, 854 F. Supp. 2d 1345, 1356 (S.D. Ga. 2011) (collecting cases). The Court should, therefore, find that defendants have sufficiently shown that they were acting within the scope of their discretionary authority.

Having made the threshold showing, the burden shifts to Johnson to show that defendants violated his clearly established constitutional rights. *See, e.g., J.I.W. by and through T.W. v. Dorminey*, 2022 WL 17351654, at *3-*4 (11th Cir. Dec. 1, 2022) (quoting *Lee*, 284 F.3d at

7

1194). Johnson has clearly not borne that burden. As defendants point out, the Court considers whether, construed in Plaintiff's favor, "the facts alleged show the officer's conduct violated a constitutional right?" Doc. 19-1 at 4 (internal quotation marks omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).[1] The Court must also determine "whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." *Pearson*, 555 U.S. at 232 (internal quotation marks omitted) (quoting *Saucier*, 533 U.S. at 201).

Defendants argue that the facts alleged in Johnson's Complaint "demonstrate that Defendants had arguable probable cause to believe that Plaintiff was knowingly and willfully hindering Defendants' investigation[,]" and, therefore, to arrest him for misdemeanor obstruction. Doc. 19-1 at 5-6. As this Court has explained, "[i]n a Fourth Amendment analysis of an arrest, the standard is *arguable*, not actual, probable cause." *Townsend*, 854 F. Supp. 2d 1357 (citing *Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007)). "Arguable probable

---

[1] The Supreme Court has subsequently clarified that *Saucier*'s sequence for the qualified-immunity analysis is not "mandatory." *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). There is no doubt, however, that *Saucier* correctly stated the substantive inquiry and, moreover, the Supreme Court has recognized that the sequential analysis "is often beneficial." *Id.*

cause exists if reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest. [Cit.] This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists." *Id.* (internal quotation marks omitted) (quoting *Skop*, 485 F.3d at 1137).

*Townsend* went on to consider whether a defendant officer had arguable probable cause to arrest the plaintiff for misdemeanor obstruction, under O.C.G.A. § 16-10-24(a). 854 F. Supp. 2d at 1357-58. The Court explained that "[r]efusing to comply with an officer's command is sufficient to form the basis of an obstruction charge." *Id.* (collecting cases). Defendants contend that "Plaintiff admits that he was instructed by Officer Werner to remain at the premises while Defendants[ ] investigated [whether he had been "banned"]. However, before Defendants could finish their investigation, Plaintiff chose to ignore Officer Werner's instructions by attempting to ride away from the store on his bicycle." Doc. 19-1 at 6. Johnson's Complaint does allege that, after he was told that he was not free to go, "he stopped [his] bicycle,

9

because it had been unclear whether or not [he was] still . . . being held." Doc. 1 at 6.[2] In *Townsend*, the Court noted that "[e]ven viewing Plaintiff's words and conduct toward [the officer] as expressing confusion, the objective facts . . . remained the same: Plaintiff was noncompliant with his orders." 854 F. Supp. 2d at 1357-58. Although Johnson vigorously disputes whether he was properly detained pursuant to the store manager's allegation that he was "banned," he never disputes the fact that he rode his bicycle, at least some distance, despite being told he was not free to leave. *See generally* doc. 29. Even assuming that the defendants' determination that they had probable cause to arrest Johnson for obstruction was mistaken, the facts he alleges establish that they had, at least, arguable probable cause.

Viewing the totality of the circumstances, and taking the allegations in Plaintiff's Complaint as true, defendants have made

---

[2] Johnson alleges, in unedited form: "OFC. J. Werner then told us that we were not free to go because, the store manager wanted us banned, without a valid reason. When I asked why we were being banned and detained without cause, neither officer could provide a reason. Still on the premises about 20 feet from the main entrance of the store I stopped my bicycle, because it had been unclear whether or not we were still being held." Doc. 1 at 5-6. The Court previously noted that it is entirely unclear who else was with Johnson during this encounter. *See* doc. 7 at 4 n. 2. Although it is irrelevant, the police report attached to one of Johnson's prior submissions identifies the "colleague." *See* doc. 23 at 5.

sufficient showing that the actions at issue were taken within their discretionary authority. Based on Plaintiff's Complaint and responses, taken as true and viewed in his favor, the Court cannot say that Defendants did not have at least arguable probable cause to detain and arrest Plaintiff for the misdemeanor offense of obstruction. He has, therefore, not borne his burden to show that defendants are not entitled to qualified immunity. Accordingly, their Motion to Dismiss on qualified-immunity grounds should be **GRANTED**. Doc. 19. Johnson's Complaint should, therefore, be **DISMISSED**. Doc. 1.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 6th day of January, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA